IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ADEL ASSAAD, an individual,

    Plaintiff,

v.

AMERICAN NATIONAL INSURANCE COMPANY, a corporation, HOYT STRICKLAND, an individual, and DOES 1 through 10, inclusive,

    Defendants.

No. C 10-03712 WHA

**ORDER DENYING DEFENDANTS' MOTIONS TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

## INTRODUCTION

In this FEHA and tort action arising from plaintiff's employment with defendants, defendants move to compel arbitration and stay proceedings. For the reasons below, defendants' motions are **DENIED**.

## STATEMENT

Plaintiff Adel Assaad is a native of Egypt who came to the United States in 1991 and became an American citizen in 1993. That year he also became a sales agent for defendant American National Insurance Company, a Texas-based corporation with offices along the West Coast. Mr. Assaad was originally based out of ANICO's Pasadena office. He began his career by selling life insurance policies door to door, then quickly accepted a promotion to sales manager. As a sales manager, he supervised a team of sales agents. He left the company in 1996, returned

1   in 1998, and accepted a promotion to district manager the next year. As district manager, he
2   oversaw the affairs of multiple offices at once.

3   Over the course of a decade, as a sales and district manager, Assaad was sent to troubled
4   branch offices in West Los Angeles, Camarillo, Seattle, and Hayward. Assaad implemented
5   changes and all of these offices improved. His housecleaning methods rankled some ANICO
6   employees, several of whom resigned or were terminated, but his efforts and successes pleased
7   most ANICO executives.

8   Most, not all. Defendant Hoyt Strickland, a Texan, was an ANICO regional manager and
9   Assaad's superior in 2004, when Assaad was sent to turn around the Hayward office. According
10  to the complaint, when Assaad reported the extent of Hayward's problems, Strickland reacted
11  with hostility. So began a pattern of discrimination, harassment, belittlement, and ridicule, the
12  complaint herein alleges. Assaad complained about Strickland to an ANICO vice president in
13  2007 but was rebuffed. Conditions worsened for Assaad thereafter. According to the complaint,
14  Strickland was exasperated by Assaad's earnest diligence. Strickland resorted to bullying tactics
15  to undermine Assaad's authority and undo several of his actions. Finally, in 2009 Assaad was
16  demoted back to sales manager, had his pay slashed, and was banished to El Cerrito. Defendants
17  have denied these allegations of workplace wrongdoing in their answer.

18  When Assaad was first made sales manager back in 1994, he was given a stack of papers
19  to sign. Among these was ANICO's "Arbitration Policy," a two-page agreement to arbitrate
20  employment-related claims rather than filing suit in court. Assaad re-executed this agreement
21  during each year of his employment. Despite this agreement, after exhausting his administrative
22  remedies, Assaad brought this action against ANICO and Hoyt Strickland in state court in July
23  2010. The complaint asserted the common-law claim of intentional infliction of emotional
24  distress, and four statutory claims under the California Fair Employment and Housing Act. *See*
25  Cal. Gov. Code §§ 12900 *et seq.* Specifically, Assaad asserted FEHA claims of national origin
26  discrimination, retaliation, failure to investigate, and hostile work environment and harassment.
27  Defendants removed based on diversity jurisdiction and now move to compel arbitration and stay
28  this action.

**ANALYSIS**

The instant motion to compel arbitration is governed by the Federal Arbitration Act. A district court's role under the FAA is limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the district court determines that a valid arbitration agreement encompasses the dispute, then the FAA requires the court to enforce the arbitration agreement according to its terms. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

In the instant action, the parties agree that an arbitration agreement exists, and that it encompasses the statutory claims and the tort claim. The parties diverge with respect to the validity of the agreement. Specifically, plaintiff contends that the agreement is unenforceable because it is unconscionable.

Under the FAA, state contract law applies to determine whether an agreement to arbitrate is valid and enforceable. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). The parties agree that California law governs the unconscionability question. The agreement itself is silent as to choice of law, but plaintiff worked in California, the agreement was signed here, and the claims asserted in the complaint are California state-law claims.

Under California law, procedural and substantive unconscionability:

> must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. But they need not be present in the same degree. Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves. In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.

*Armendariz v. Found. Health Psychcare Servs. Inc.*, 24 Cal. 4th 83, 114 (2000) (internal citations and quotation marks omitted). The parties agree that *Armendariz* controls this case.

**1. PROCEDURAL UNCONSCIONABILITY**

In California, "take it or leave it" adhesion contracts that condition an employee's continued employment on the signing of an agreement are procedurally unconscionable. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1073 (9th Cir. 2007). There is a factual dispute in the

3

instant action as to whether ANICO's arbitration agreement was adhesive. Plaintiff states that he did not have the opportunity to negotiate the agreement and instead was told to sign it or risk losing his job. Defendants deny that this was the case.

The parties do not address how this factual dispute should be dealt with. Judge Benitez in our circuit has written:

> Although neither party mentions it, Section 4 of the FAA provides for a federal court to summarily determine the matter. If requested by party [sic] resisting arbitration, the court is authorized to conduct a limited jury trial. Section 4 states, *inter alia*, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded . . . the court shall hear and determine such issue." 9 U.S.C. § 4. Courts have employed a summary judgment approach for such hearings, ruling as a matter of law where there are no genuine issues of material fact.

*Geoffroy v. Wash. Mut. Bank*, 484 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

Plaintiff in the present case has not demanded a jury trial on the arbitration issue. In the evidence presented, there is no genuine dispute as to any material fact to be resolved. As a matter of law, this order finds that the arbitration agreement was adhesive.

Defendants state that "[n]o one from the Company told [Assaad] that he would lose his job if he would not sign the Agreement" (Reply Br. 4). This statement is based on the declaration of Theresa Price, a director in the Support and Special Projects, Career Sales, and Service Division for ANICO. The declaration itself, however, states only that "I am not aware of anyone at the company having told Mr. Assaad that he would lose his job if he did not sign any arbitration agreement or provision" (Price Reply Decl. ¶ 6). Price's "lack of awareness" cannot support defendants' sweeping averment that no one at ANICO told plaintiff to "take it or leave it." She was not there when the agreement was signed. It is simply not true, as defendants assert, that there is "no evidence that ANICO insisted that plaintiff sign it or refused to negotiate any terms" (Br. 8). Assaad himself has declared,

> As a condition of my employment, ANICO required me to sign a stack of documents, which included a binding arbitration policy.
>
> The arbitration policy was neither discussed nor explained to me, and I was not given any opportunity to negotiate its terms. If I did not sign the arbitration policy, I would have been terminated. . . .

4

> It is mandatory that anyone hired to work at ANICO sign an arbitration policy. . . .
>
> Employees of ANICO, including myself, are unable to negotiate the terms of the form arbitration policy and if any employee refuses to sign it, he or she is terminated.

(Assaad Decl. ¶¶ 4, 5, 7, 9.) Price does not have first-hand knowledge, but Assaad does. In fact, as both an employee and a manager, he has been both the signer and the person who has offered the pen to others so that they could sign. Further, defendants have not provided a single example of an ANICO employee or officer who still had a job after refusing to sign the unmodified agreement.

The plain text of the agreement supports Assaad's declaration that mandatory arbitration is non-negotiable. The agreement is self-styled not as an arbitration option but as an "Arbitration Policy": "It is the policy and practice of American National Insurance Company that any legal or equitable claims or disputes . . . will be settled by binding Arbitration." Defendants point to another portion of the agreement, which refers employees with "questions regarding this Arbitration Policy" to Vice President Dixie McDaniel, as running counter to adhesion. But there is nothing like a cooling-off period or opt-out provision to indicate that the terms were negotiable. *See Davis*, 485 F.3d at 1074.

Defendants argue that the contract was not adhesive because, as the years went by, Assaad became a sophisticated party with leverage who fully understood what he was signing. There are two problems with this argument. *First*, it misconstrues the law. In part, this is because defendants rely on decisions that analyzed purported adhesion contracts outside the employment context. In conjunction with the wrong law, defendants offer the following facts: plaintiff was first asked to sign the arbitration agreement in 1994 in connection with his promotion to sales manager, well into his employment (Reply Br. 3); he had already signed a different arbitration agreement in 1993 with the sales agent union, so he already knew all about arbitration (Reply Br. 2); he later participated in an arbitration hearing involving one of his former employees (Reply Br. 3); he re-executed multiple arbitration agreements (*ibid.*); and he left the company in 1996 only to return in 1998 and again re-execute the agreement (*ibid.*). Even granting the accuracy of these facts, insofar as they refute economic duress or unfair surprise, they have no bearing on

5

whether the instant agreement was an adhesion contract. Simply put, "An arbitration agreement that is an essential part of a 'take it or leave it' employment condition, without more, is procedurally unconscionable." *Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 114 (2004).

*Second*, even if Assaad had become a sophisticated and shrewd bargainer by the time he was last asked to re-execute the agreement in 2009, this is not enough to balance the scales between employer and employee and remove the taint of procedural unconscionability. An arbitration agreement can be adhesive even if an employee is a high-level executive, because of the lack of opportunity to negotiate. *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1533–34 (1997). Moreover,

> in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.

*Armendariz*, 24 Cal. 4th at 115. The whole point of this action is that Assaad felt he had a powerful enemy in Hoyt Strickland who was placing Assaad's job in jeopardy.

In short, the arbitration agreement is procedurally unconscionable. This order so finds.

**2.    SUBSTANTIVE UNCONSCIONABILITY**

There are two aspects of substantive unconsionability under California law relevant to this inquiry:

- *First*, whether the arbitration agreement meets the minimum requirements needed to enforce FEHA claims; and
- *Second*, whether the agreement has mutuality and is not unfairly one-sided.

**A.    Minimum Requirements for the Arbitration of FEHA Claims**

The statutory rights established by the FEHA are "for a public reason" and therefore cannot be waived. "[A]rbitration agreements that encompass *unwaivable* statutory rights must be subject to particular scrutiny." *Armendariz*, 24 Cal. 4th at 100 (emphasis in original). "[A]n arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the FEHA." *Id.* at 101.

6

*Armendariz* is the leading California decision governing the substantive unconscionability of arbitration agreements. In *Armendariz*, two employees brought a wrongful termination action against their former employer, alleging violation of the FEHA and other claims, and the employer moved to compel arbitration. *Armendariz* enumerated five minimum requirements for the lawful arbitration of rights under the FEHA pursuant to a mandatory employment arbitration agreement. Such an arbitration agreement is lawful if it:

> (1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum. Thus, an employee who is made to use arbitration as a condition of employment effectively may vindicate [his or her] statutory cause of action in the arbitral forum.

*Armendariz*, 24 Cal. 4th at 102 (internal quotation marks omitted).

Plaintiff contends that the arbitration agreement in the instant action is illegal and unconscionable because it does not meet three minimum requirements. Specifically, plaintiff contends that the agreement provides for inadequate discovery; improper apportionment of costs; and, because of a restrictive notice requirement, an inadequate opportunity to vindicate statutory rights.

### (i) Discovery

"[A]dequate discovery is indispensable for the vindication of FEHA claims." *Id.* at 104. Turning to the arbitration agreement, the relevant portions provide:

> The arbitration shall be conducted before a single arbitrator from the National Arbitration Forum or such other arbitration association as to which the parties may mutually agree. . . .

> Employees are entitled to representation by an attorney throughout the proceedings at his or her own expense and are responsible for costs incurred on Employee's behalf, such as discovery, expert witnesses, consultants, etc.

Plaintiff points out that these provisions, although contemplating discovery, do not expressly provide for discovery. Instead, they refer implicitly to NAF policies — but no such NAF discovery policies were attached to the agreement. Thus, plaintiff argues that the discovery portions of the agreement runs afoul of *Armendariz*.

These portions of the agreement do provide for adequate discovery, for two reasons.

*First*, there is no restriction on discovery, such as a limit on depositions or interrogatories. In this situation,

> when parties agree to arbitrate statutory claims, they also implicitly agree, absent express language to the contrary, to such procedures as are necessary to vindicate that claim. . . . [I]t is undisputed that some discovery is often necessary for vindicating a FEHA claim. . . .
>
> [T]he employer, by agreeing to arbitrate the FEHA claim, has already impliedly consented to such discovery.

*Armendariz*, 24 Cal. 4th at 106. Taking judicial notice of the NAF rules, Rule 29 provides for cooperative discovery, or, in the absence of cooperation, the disclosure of documents, sworn answers to up to twenty-five written questions, one or more depositions, and other discovery including requests for admissions and requests for physical or mental examinations. Rule 29 also provides for responses, objections, orders, and sanctions. This is not what a plaintiff would get leading up to a trial in court, but it comes with the territory of arbitration.

*Second*, although arbitration agreements that incorporate unattached side agreements *can* be unconscionable, the instant arbitration agreement is neither in conflict with third-party rules nor is it pegged to such rules that are unfair to the weaker party. This distinguishes the present case from the decisions plaintiff relies on to demonstrate the unconscionability of ANICO's agreement.

The provisions in the arbitration agreement regarding discovery meet the minimum standards required by California law.

### (ii) Cost Shifting

Plaintiff contends that a cost-shifting provision in the arbitration agreement runs afoul of *Armendariz* by potentially putting the burden of the forum costs on the employee.

> [W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court. This rule will ensure that employees bringing FEHA claims will not be deterred by costs greater than the usual costs incurred during litigation, costs that are essentially imposed on an employee by the employer.

*Id.* at 110–111.  The rationale is that the possibility that the employee will be charged substantial forum costs may chill the exercise of statutory rights.

> Nor would there be an advantage to apportioning arbitration costs at the conclusion of the arbitration rather than at the outset. *Without clearly articulated guidelines*, such a postarbitration apportionment would create a sense of risk and uncertainty among employees that could discourage the arbitration of meritorious claims.

*Id.* at 111 (emphasis added).

Turning to the agreement, the relevant portion provides:

> American National Insurance Company shall pay all costs and fees of the arbitration as imposed by the chosen arbitration association. . . . Notwithstanding . . . where the employer wholly or substantially prevails, the arbitrator may award the employer its costs, including the costs and fees of the arbitration, and reasonable attorney fees, as otherwise permitted by federal, state or local statute, law, regulation or practice.

This is a masterpiece of obfuscation.  ANICO defends this cost-shifting provision by noting that it includes an "as otherwise permitted" savings clause that makes it conform to the law.  The savings clause cannot save it from unconscionability.  *First*, an employee could reasonably read this provision and conclude that he or she would be on the hook for substantial forum costs in the event the employer prevailed.  This conclusion might well deter an action and chill the exercise of statutory rights.  Leaving it to the employee to ferret out the state of the law does not equate with "clearly articulated guidelines."  And it does seem to say that a losing employee can be on the hook for the arbitrator's fees.  *Second*, if the arbitrator did award costs against an employee in accordance with the provision, the burden would then be on the employee to challenge such an award in court, and incur further expenses that way, *i.e.*, doubling down.  A cost-shifting scheme might be permissible if explicitly restricted to employee claims brought in bad faith or completely without merit, but this agreement does not so provide.

The provision in the arbitration agreement regarding the allocation of forum costs does not meet the minimum standards required by California law.

### (iii)  Thirty-Day Notice Period

Plaintiff contends that the arbitration agreement contains an oppressively restrictive notice period.  In general terms, under California law,

9

> parties agreeing to arbitrate statutory claims must be deemed to consent to abide by the substantive and remedial provisions of the statute. Otherwise, a party would not be able to fully vindicate [his or her] statutory cause of action in the arbitral forum.

*Id.* at 101 (internal citation and quotation marks omitted). Though not specifically identified in *Armendariz*, subsequent decisions have found that provisions that shorten the statute of limitations may fall short of the necessary minimum requirements. *See, e.g.*, *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267 (2004).

Turning to the agreement, the relevant portion provides:

> You must provide a written request for arbitration within 30 days from the date of termination or other adverse employment action subject to the Policy. . . . Failure to provide written notice in the specified time period waives any right to raise any claim, in any forum, arising out of or related to your employment relationship with American National Insurance Company.

This notice provision thus functions as a statute of limitations. Thirty days is far shorter than the one year provided for by the FEHA. Cal. Gov. Code § 12960(d).

There are multiple Ninth Circuit and California decisions holding that forcing employees to comply with strict limitations periods as long as *one year* for employment-related statutory claims is oppressive in a mandatory arbitration context. *See Davis*, 485 F.3d at 1066–67 (collecting cases). This is, in part, because such limitations periods chop off claims of *ongoing* violations of employment-related statutes. A decision from the Southern District of California, confronting a thirty-day notice period, concluded that such a period is unconscionable even as applied to *discrete* violations:

> While the employer already has immediate access to counsel for legal advice if it is uncertain as to its legal rights in relation to an act of the employee, employees do not generally have such ready access to counsel. If an aggrieved employee is uncertain whether he has a claim, it may take the employee more than thirty days to retain counsel and determine whether an act by the employer violated the employee's statutory rights. If an employee has a general sense that he has been wronged but lacks the sophistication to determine what legal claims he should bring, even if he complies with the thirty-day deadline to file a dispute in writing, he may fail to bring the correct claims during this internal resolution period and waive his right to assert meritorious claims later in the proceedings after obtaining counsel.

*McKinney v. Bonilla*, No. 07cv2373, 2010 WL 2817179, at *9 (S.D. Cal. July 16, 2010) (Hayes, J.). This analysis is persuasive. This thirty-day window "functions as a trap for the unwary, limits the employee's ability to consult counsel, and appears to serve no legitimate purpose."

10

*Ibid.* This provision imposes a vastly shortened statute of limitations and constitutes an unlawful attempt by ANICO to restrict its employees' rights.

The provision in the arbitration agreement regarding the notice period does not meet the minimum standards required by California law.

### B. Mutuality

As discussed above, the ANICO arbitration agreement has two provisions that fall short of the minimum required by California law. In addition, plaintiff contends that the entire agreement is permeated by unconscionability because it lacks mutuality by being unfairly lopsided in favor of the stronger party. Mutuality is a significant concern:

> Given the lack of choice and the potential disadvantages that even a fair arbitration system can harbor for employees, we must be particularly attuned to claims that employers with superior bargaining power have imposed one-sided, substantively unconscionable terms as part of an arbitration agreement.

*Armendariz*, 24 Cal. 4th at 115. In the same vein,

> [t]he paramount consideration in assessing conscionability is mutuality. Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided. Agreements to arbitrate must contain at least a modicum of bilaterality to avoid unconscionability. . . .
>
> In sum, a wide variety of attributes may affect the determination of substantive unconscionability. But the key factor is lack of mutuality. And the determinative question is whether the contract terms are so harsh or one-sided that they lack basic fairness.

*Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657–58 (2004) (internal quotation marks omitted).

Lack of mutuality is especially disturbing in the arbitration context because the employee must bear not only "the inherent shortcomings of arbitration — limited discovery, limited judicial review, limited procedural protections," but then also "special advantages" accruing only to the employer, written in by the employer. *Armendariz*, 24 Cal. 4th at 116. Lack of mutuality may take several forms, such as where an employee must waive the right to challenge the jurisdiction of the court where the employee is being sued, or where the payment of salary stops when the employee files an arbitration claim. *See Stirlen*, 51 Cal. App. 4th at 1528–29. The typical form is where an agreement requires the employee, but not the employer, to forego litigation:

11

> Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on business realities.  As has been recognized unconscionability turns not only on a one-sided result, but also on an absence of justification for it.  If the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration.  Without reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage.  Arbitration was not intended for this purpose.

*Armendariz*, 24 Cal. 4th at 117–18 (internal citation and quotation marks omitted).  Plaintiff argues that the ANICO agreement lacks such mutuality, or would appear to, because the specific examples of claims given in the agreement are all claims that only an employee would assert.

Turning to the agreement, the relevant portion provides:

> It is the policy and practice of American National Insurance Company that any legal or equitable claims or disputes arising out of or in connection with employment, the terms and conditions of employment, or the termination of employment . . . will be settled by binding Arbitration.  This Policy applies to the following allegations, disputes and claims for relief, but is not limited to those listed:  wrongful discharge under statutory law and common law; employment discrimination and/or harassment based on federal, state or local statute, ordinance, or governmental regulations; retaliatory discharge or other action; compensation disputes; tortious conduct; contractual violations . . . ; ERISA violations; and other statutory and common law claims and disputes . . .

True, the specific illustrative examples are confined to those an employee would bring.  But the provision encompasses "any legal or equitable claims or disputes," including all contracts and torts claims of the sort an employer would bring, including those presumably for allegedly stealing trade secrets, *i.e.*, even those would have to be brought in arbitration.  This appears not to be an agreement that forces an employee to arbitrate while giving an employer its choice of forum.

And yet the agreement is devoid of mutuality.  The lack of mutuality arises from the abovementioned thirty-day limitation period.  Turning again to that portion of the agreement:

> You must provide a written request for arbitration within 30 days from the date of termination or other adverse employment action subject to the Policy. . . . Failure to provide written notice in the specified time period waives any right to raise any claim, in any forum, arising out of or related to your employment relationship with American National Insurance Company.

12

1  This notice provision singles out and binds only "you," the employee.  Any doubt that "you" does
2  not also refer to the company itself is removed by later language occurring in the provision
3  regarding selection of a neutral decisionmaker: "You and the company representative will
4  alternately eliminate one name [from a list of seven qualified arbitrators] until only one remains."
5  The company thus stands apart from "you."

6  Not only does the ANICO agreement feature two oppressive provisions, the entire
7  agreement is tainted by a lopsided notice scheme that forces *only* the weaker party to beat the
8  clock.  The benefit of this one-sided provision flows only to defendant.  ANICO does not claim
9  that this one-sided notice provision is justified by a business reality or commercial need.  In short,
10 the arbitration agreement is substantively unconscionable.

    **3.  SLIDING SCALE**

12 Having found that the mandatory employment arbitration agreement is both procedurally
13 and substantively unconscionable, it is time to evaluate the interplay between these two findings
14 for the ultimate determination of whether the agreement is unconscionable, in accordance with the
15 "sliding scale" described in *Armendariz*.

16 It is noteworthy that the arbitration agreement imposes a thirty-day time limitation on the
17 employee only.  The agreement provides for no such limitation — indeed, no limitation at all —
18 on claims brought by the employer, as stated.  The notice provision thus offends twice.
19 Specifically, the thirty-day window is uncommonly short and undoubtedly effective at snuffing
20 out potentially meritorious claims.  In contrast, ANICO, the party with better resources, may
21 bring claims at its leisure.  The unconscionable one-sidedness of the limitations provision is
22 compounded by the chilling cost-shifting provision.  An employee who hesitates because of
23 reluctance to run the risk of bearing the forum costs could easily fail to beat the buzzer and totally
24 forfeit the ability to seek vindication of his or her rights.

25 Defendants have pointed to several facts discussed above that call into question Assaad's
26 portrayal of himself as a helpless, ill-informed, confused, and vulnerable party to the agreement.
27 But even this lower quantum of procedural unconscionability, coupled with the high degree of

13

substantive unconscionability here, compels the conclusion that the mandatory arbitration agreement is unconscionable.

### 4. SEVERABILITY

Defendants contend that arbitration should nonetheless be compelled because offending provisions of the arbitration agreement may be severed. While it is possible to sever unconscionable provisions from an arbitration agreement pursuant to California Civil Code Section 1670.5(a), that is only the proper course of action where the unconscionability does not permeate the entire agreement. *Armendariz*, 24 Cal. 4th at 124–25. In this connection:

> Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate. That Civil Code section 1670.5 follows this basic model is suggested by the Legislative Committee comment quoted above, which talks in terms of contracts not being enforced if "permeated" by unconscionability, and of clauses being severed if "so tainted or . . . contrary to the essential purpose of the agreement."

*Id.* at 124. Two factors from *Armendariz* are relevant in determining whether to invalidate the whole agreement or sever offending provisions. *First*, more than one unlawful provision may "indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Ibid.* In the present agreement, there is both an offending cost-shifting provision and an offending notice period that functions as an illegal statute of limitations. *Second*, there is no way to remove the unconscionable non-mutuality by simply striking or restricting provisions. The thirty-day limit is not a burr that can be plucked. It does not, for example, regard the rights of the parties after an arbitration award is made; it affects the very scope of the arbitration. It not only restricts rights, it restricts only the employees' rights. To cure this agreement "the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms." This is not permissible under California law, and the offending provisions cannot be severed so as to permit the enforcement of the remainder of the agreement to arbitrate. *Id.* at 125. To acquiesce in re-writing so offensive a contract would invite employers to impose plainly one-sided contracts and then later negotiate with the courts so as to salvage the most one-sided

14

language judges will tolerate. Instead, employers should be encouraged to draft fair provisions from the outset.

Defendants have offered to not enforce the thirty-day limitation and thus stipulate to the mutuality of the agreement, but the California Supreme Court explicitly rejected such an approach:

> [W]hether an employer is willing . . . to allow the arbitration provision to be mutually applicable, or to encompass the full range of remedies, does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy. Such a willingness "can be seen, at most, as an offer to modify the contract; an offer that was never accepted. No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it."

*Ibid.* (citation omitted).

There is a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). But this agreement cannot be rewritten for the parties. The ANICO arbitration agreement is permeated with illegality and unconscionability. The unilateral thirty-day statute of limitations is egregious. The cost-shifting provision could deter the assertion of meritorious claims. In short, the agreement is unenforceable.

## CONCLUSION

For the reasons above, ANICO's motions to compel arbitration and stay this action are **DENIED**.

**IT IS SO ORDERED.**

Dated: December 23, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE